[Cite as *Ohio State Bar Assn. v. United Fin. Sys. Corp.*, 124 Ohio St.3d 301, 2010-Ohio-143.]

OHIO STATE BAR ASSOCIATION *v.* UNITED FINANCIAL
SYSTEMS CORPORATION.
[Cite as *Ohio State Bar Assn. v. United Fin. Sys. Corp.*,
124 Ohio St.3d 301, 2010-Ohio-143.]

*Unauthorized practice of law — Consent decree pursuant to Gov.Bar R. VII(5b) — Conduct enjoined.*

(No. 2009-1645 — Submitted September 30, 2009 — Decided January 27, 2010.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the
Supreme Court, No. UPL 09-02.

_____

{¶ 1} Pursuant to Gov.Bar R. VII(5b), the Board on the Unauthorized Practice of Law recommends our approval of a consent decree proposed by relator, Ohio State Bar Association, and respondent, United Financial Systems Corporation. We accept the board's recommendation and approve the proposed consent decree as follows:

{¶ 2} 1. Respondent, United Financial Systems Corporation, is a corporation with its principal place of business in Indiana and is organized and existing under the laws of that state.

{¶ 3} 2. Respondent, as a corporation, is not, and has never been, an attorney admitted to practice, granted active status, or certified to practice law in the state of Ohio pursuant to Rules I, II, VI, IX, or XI of the Ohio Supreme Court Rules for the Government of the Bar.

{¶ 4} 3. Respondent has engaged in the unauthorized practice of law by marketing and selling to residents of the state of Ohio living trusts and other estate-planning and transfer documents.

**{¶ 5}** 4. Respondent's business practice of marketing and selling estate-planning services included the following:

**{¶ 6}** a. Respondent solicited Ohio residents by conducting mass mailings that encouraged recipients to return a postcard to obtain more information. Respondent then contacted these potential clients by telephone to schedule a meeting in the client's home.

**{¶ 7}** b. Respondent then sent an estate-planning-assistance representative, who was a nonlawyer affiliated with respondent, to meet with the potential client and obtain various types of information necessary for the estate-planning process. Specifically, the estate-planning-assistance representative had the client complete (or assisted the client in completing) a personal and financial organizer to provide information such as the client's name, address, children's names, information regarding a trust (if the client desired a trust), names of proposed executors, a list of assets, and other relevant information to be used in the creation of the client's estate plan.

**{¶ 8}** c. The estate-planning-assistance representative also made a presentation about possible estate-planning options, including specific types of documents that could be prepared for the client. This person also discussed legal issues, even though the representative was not a lawyer.

**{¶ 9}** d. If the client agreed to purchase estate-planning documentation from respondent, the estate-planning-assistance representative had the client sign an agreement and receipt and collected a flat fee ranging from $695 to $2,495, which included the retention of an attorney selected by respondent. The representative then submitted the personal and financial organizer and payment directly to respondent.

**{¶ 10}** e. Upon receipt of the information and payment from the estate-planning-assistance representative, respondent forwarded the client's file, including the personal and financial organizer, to an attorney.

{¶ 11} f.    Of the fee respondent collected for the preparation of estate-planning documents, the attorney who participated in the preparation of the documents received only $150 to $225, depending on the specific document packages ordered by the client. The attorney also received $75 from respondent for the preparation of an irrevocable life-insurance trust or a will document package.

{¶ 12} g.    Once the attorney had received the personal and financial organizer, he or she would sometimes contact the client by telephone to discuss the appropriate form of the client's estate plan, verify the information previously obtained by the estate-planning-assistance representative, and make certain that the client understood what documents were to be completed.

{¶ 13} h.    When the attorney obtained all the necessary information from the client, the trust or estate-planning documents would be prepared.  The attorney then sent the documents to respondent, which then delivered them to the client. The documents were not delivered to the client by the attorney.

{¶ 14} i.    Respondent generally delivered the documents to the client by sending a financial-planning-assistance representative, another nonlawyer affiliated with respondent, to meet with the client. In addition to assisting the client in executing the documents and reviewing the trust-funding process, the financial-planning-assistance representative attempted to sell the client life insurance, long-term-care insurance, and other insurance products.

{¶ 15} j.    Generally, no lawyer was present at the execution of the estate-planning documents, and the involved lawyer never saw the executed documents.

{¶ 16} 5.    As a result of the activities of respondent in Ohio and of its activities at its principal place of business in the state of Indiana designed and intended to take effect in Ohio, over 2,000 residents of the state of Ohio have purchased estate- planning documents that may be of doubtful utility. In any

event, these persons have been subject to the unauthorized practice of law by respondent.

{¶ 17} 6.    It is the desire of the parties to settle this litigation.

{¶ 18} 7.    Respondent ceased the marketing and sale of estate-planning services prior to the filing of relator's complaint and has fully cooperated with relator's investigation of this matter.

{¶ 19} 8.    Relator does not recommend the imposition of civil penalties pursuant to Gov.Bar R. VII(8)(B).

{¶ 20} It is hereby ordered:

{¶ 21} A.    Respondent is enjoined from all activities that constitute the unauthorized practice of law, including:

{¶ 22} (i)    the marketing, sale, or preparation of legal documents in Ohio by or on behalf of respondent;

{¶ 23} (ii)    the rendering of advice regarding legal documents by or on behalf of respondent;

{¶ 24} (iii)    facilitation or assistance with respect to any amendment to legal documents; and

{¶ 25} (iv)    providing any advice regarding settling or processing of trusts or estates, provided, however, that respondent can continue to assist its customers in processing insurance and annuity claim forms and can perform other authorized activities as an insurance agency registered with the Ohio Department of Insurance, including the sale of insurance and annuities.

{¶ 26} B.    Written notice, at respondent's cost, shall be provided (either by relator or under relator's supervision) to all persons who have received services from respondent that:

{¶ 27} (i)    respondent has ceased the marketing and sale of estate-planning services;

{¶ 28} (ii) this court has determined that the preparation, marketing, and sale of estate-planning documents constitute the unauthorized practice of law; and

{¶ 29} (iii) respondent has fully cooperated with relator's investigation of this matter, and as part of the consent decree entered into between the parties and approved by the court, this court has ordered respondent to cease the marketing, sale, and preparation of estate-planning services;

{¶ 30} (iv) clients should contact an attorney of their choosing who is not affiliated with or paid by respondent:

{¶ 31} (a) to determine whether the trust or other documents prepared through respondent meets the client's needs, or

{¶ 32} (b) for purposes of preparing any modifications or amendments to their estate-planning documents.

{¶ 33} The form, content, and delivery of this notice shall be in a manner satisfactory to relator. At relator's option, respondent shall provide to relator the name and address of every person residing in Ohio who received a legal document through respondent.

{¶ 34} C. Respondent shall be assessed all costs of this matter pursuant to Gov.Bar R. VII(8)(A).

{¶ 35} Costs are taxed to respondent.

So ordered.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jones Day, David A. Kutik, and Jonathan F. Feczko; and Eugene P. Whetzel, Bar Counsel, for relator.

Kegler, Brown, Hill & Ritter, L.P.A., Geoffrey Stern, and Christopher J. Weber, for respondent.

_____